Filed 2/25/25  Mondrosch v. Hegedus CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SAMANTHA MONDROSCH et al., | B331554 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC723462) |
| v. | |
| JENEVIEVE HEGEDUS et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard J. Burdge, Jr., Judge.  Affirmed.

Law Office of David Feldman and David Feldman for Plaintiffs and Appellants.

Horvitz & Levy, John F. Querio, Steven S. Fleischman; Knapp, Petersen & Clarke, Peter J. Senuty, Stephen C. Pasarow and Maria A. Grover for Defendant and Respondent Jenevieve Hegedus.

Pacific Law Partners, Matthew F. Batezel and Nicholas F. Gennaro for Defendant and Respondent State Farm Mutual Automobile Insurance Company.

_____

This case involves a traffic accident in which Tracy Adams was riding her bicycle on Sepulveda Boulevard in Los Angeles when Erik Limon struck her with his car, throwing Adams's body onto the hood of Limon's car and then onto the roadway, where a second car driven by Jenevieve Hegedus ran over Adams's body. Adams died; both drivers fled. Adams was survived by Samantha Mondrosch and Michael Golden (Adams's daughter and husband; plaintiffs), who filed a wrongful death action against Limon and Hegedus.[1] Prior to trial, after Hegedus failed to respond to plaintiffs' requests for admission, the trial court granted plaintiffs' motion to deem admitted that Hegedus was negligent and caused Adams's death (deemed admissions). After plaintiffs filed a motion for terminating sanctions for Hegedus's failure to respond to any discovery, State Farm Mutual Automobile Insurance Company, which insured Hegedus's vehicle, intervened as a defendant. At trial, plaintiffs were allowed to introduce the deemed admissions, and both Hegedus and State Farm were allowed to present expert testimony that Adams died as a result of the crash with Limon. The jury found Hegedus's negligence was not a substantial factor in Adams's death, and it returned a verdict in favor of Hegedus and State Farm.

---

[1] The plaintiffs and Limon settled before trial; Limon is not a party on appeal.

2

On appeal from the judgment, plaintiffs contend the trial court prejudicially erred by allowing Hegedus to contest liability at trial and to present expert testimony on causation. Plaintiffs also argue the court erred in instructing the jury that it was not required to accept Hegedus's deemed admissions. Plaintiffs concede there was no error as to State Farm, which was not bound by the deemed admissions and was entitled to present a complete defense. Any instructional error in allowing the jury to consider the defense evidence on causation with respect to Hegedus's liability was invited error because plaintiffs objected to the trial court's tentative ruling on State Farm's motion in limine that would have prevented Hegedus from contesting liability, and they agreed to a modified jury instruction that allowed introduction of the deemed admissions in exchange for the ability of both defendants to present evidence on causation. At the time plaintiffs agreed to the compromise instruction on the eve of trial, they had not retained any experts or taken any discovery of the defense experts on causation. Having made a bargain that allowed them to rely on the deemed admissions to prove their case (and potentially recover from both defendants), they cannot now, after receiving a defense verdict, argue the instruction was error. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Accident*

On September 6, 2017 at approximately 11:20 p.m., Adams was riding her bicycle northbound against traffic on the edge of

3

the number 3 lane[2] of Sepulveda Boulevard south of Stagg Street in the Van Nuys neighborhood of Los Angeles. She was traveling at approximately nine miles per hour when Limon, driving a sedan heading east on Stagg Street, turned right onto Sepulveda Boulevard without stopping. Limon then headed southbound on Sepulveda Boulevard in the number 3 lane, traveling 16 to 17 miles per hour, when his car collided nearly head-on with Adams. Adams was projected onto the hood of Limon's car with her bicycle dragged underneath the car, and Adams's body was thrown onto the middle of the number 2 lane. The collision was recorded by a surveillance camera at a nearby restaurant, although the aftermath of the collision (including the path of Adams's body after landing on the car's hood) was not in the video frame. Limon did not stop after the collision.

About a minute and a half later, Hegedus was driving south in the number 2 lane of Sepulveda Boulevard when she ran over Adams's body. According to Fernando Marangone, an eyewitness who arrived at the scene after the first collision, Adams was lying unresponsive in the roadway when Hegedus's car drove "right straight all over" Adams. Hegedus stopped momentarily, then drove off. The area where Marangone said he saw this collision is outside the coverage of the surveillance cameras. However, footage from a second surveillance camera showed that about 85 seconds after the first collision with Limon's car, Adams's body was thrown through the air and landed further down Sepulveda Boulevard. "Biological material" from a human body was later found on Hegedus's car and on the

---

[2]    The number 1 lane is the fast lane located closest to the center of the road; the number 3 lane is the furthest from the center of the road.

4

roadway at the likely point of impact with Hegedus's car, 60 or 70 feet south of the first collision.

Police arrived less than a minute after Hegedus ran over Adams. Adams was pronounced dead at the scene. After an autopsy, the coroner determined Adams died as a result of multiple blunt force injuries. Hegedus was later arrested and pleaded no contest to felony hit and run resulting in death (Veh. Code, § 20001, subd. (b)(2)).

B.     *The Complaint*

On September 27, 2018 Mondrosch and Golden filed this action against Limon and Hegedus. The complaint asserted a cause of action for wrongful death on behalf of Golden and Mondrosch as Adams's surviving heirs, and a survivorship cause of action on behalf of Golden as the successor-in-interest to Adams's estate; both causes of action alleged Limon and Hegedus were negligent. Plaintiffs prayed for noneconomic damages, compensation for loss of companionship, property damage, punitive and exemplary damages, and other relief.

In January 2019 Hegedus, represented by attorneys at Knapp, Petersen & Clarke,[3] answered the complaint with a general denial and affirmative defenses, including comparative, contributory, and third-party negligence. In March 2020 plaintiffs settled their claims against Limon for $15,000—the

---

[3]     State Farm insured the vehicle driven by Hegedus, and in 2018 it hired Knapp, Petersen & Clarke to defend her.

5

limit of Limon's insurance policy—and Limon was dismissed from the action before trial.[4]

C.   *Requests for Admissions*

On November 4, 2020 plaintiffs served seven requests for admissions and other written discovery on Hegedus through her attorney.  The requests for admissions included the following: "Please admit that at the time of the incident you were negligent"; "Please admit that you failed to use reasonable care in driving a vehicle at the time of the incident"; and "Please admit that you caused the death of [Adams]."  Hegedus's attorneys requested and received a 30-day extension of time to respond to discovery, but Hegedus served no responses.

In March 2021 plaintiffs filed a motion to have the requests for admissions deemed admitted pursuant to Code of Civil Procedure section 2033.280.[5]  On June 9, 2021, after a hearing at which Hegedus and her attorneys did not appear, the trial court[6] found, "[I]t is undisputed [Hegedus] did not serve timely

---

[4]   Limon and Hegedus filed cross-complaints against each other for indemnity and apportionment.  They dismissed their cross-complaints in April 2023, shortly before trial.

[5]   Code of Civil Procedure section 2033.280 provides, "If a party to whom requests for admission are directed fails to serve a timely response," then "(a) [t]he party to whom the requests for admission are directed waives any objection to the requests . . . [,]" and "(b) [t]he requesting party may move for an order that . . . the truth of any matters specified in the requests be deemed admitted."  All further undesignated statutory references are to the Code of Civil Procedure.

[6]   Judge Edward B. Moreton.

responses and it does not appear [Hegedus] served substantially compliant responses prior to the hearing on this [m]otion." The court deemed the requests for admissions admitted. The court also compelled written discovery responses.

Two weeks later Hegedus's attorneys filed a motion for relief from the June 9 discovery order based on the attorneys' mistake, inadvertence and excusable neglect pursuant to sections 473, subdivision (d), and 2033.280, subdivision (a)(2). As set forth in the motion and supporting declarations, Hegedus's attorneys had difficulty locating her from the outset of the dispute. Initially, the attorneys hired an investigator who found Hegedus's mother, and the mother was able to secure Hegedus's cooperation in the defense. But Hegedus's relationship with her family grew strained, and the mother lost touch with Hegedus. After receiving the requests for admission, Hegedus's attorneys "attempted to contact [Hegedus] on several occasions via telephone, but received no response." The mother reported she was not in contact with Hegedus. The attorneys hired an investigator to locate Hegedus, but they had not been able to locate her.

In addition, Hegedus's attorneys failed to calendar plaintiffs' motion and circulate it within the law firm, and as a result of this error they were unaware of the deadlines and did not respond to the motion or appear at the June 9, 2021 hearing. With respect to the underlying discovery, the motion argued that any admissions would be inconsistent with the "[t]rue [f]acts," which were that Hegedus "did not cause the original accident and she did not cause [Adams's] death." (Boldface omitted.) Limon was "[c]learly . . . the party at fault," and it was also possible Adams contributed to her own death. Hegedus was entitled to

7

relief from her attorney's mistake because she was "not liable, or at least [not] fully liable."

After a hearing, on October 29, 2021 the trial court[7] denied Hegedus's motion for relief. The court found that although the failure of Hegedus's attorneys to calendar plaintiffs' motion might provide grounds for relief under section 2033.280, it was Hegedus's "unknown whereabouts and failure to contact her attorney (for almost a year) which resulted in the RFA's being deemed admitted." Hegedus's "unexplained decision to become incommunicado does not constitute mistake, inadvertence, or excusable neglect."

D.     *State Farm's Intervention*

On March 25, 2022 State Farm filed an ex parte application to intervene as a defendant. In the application and supporting attorney declaration, State Farm stated the vehicle driven by Hegedus was insured by State Farm through an automobile policy held by a third party.[8] Plaintiffs' attorneys had notified State Farm of the accident, but State Farm had difficulty in determining the circumstances of the accident from the policyholder, and Hegedus was in jail at the time. In April 2018, after completing a coverage investigation, State Farm offered plaintiffs a settlement at the $30,000 policy limit. After learning the lawsuit had been filed, in December 2018 State Farm retained Knapp, Petersen & Clark to defend Hegedus, even though they had not yet located her. As discussed, Hegedus's

---

[7]     Judge William A. Crowfoot.

[8]     The registered owner of the vehicle was an automobile repair shop.

attorneys were initially able to contact Hegedus through her mother, but by 2021 the family lost contact; as of early 2022, Hegedus's last known telephone number had its service discontinued. A private investigator determined Hegedus was likely living on the streets and her whereabouts were unknown. State Farm concluded it was unlikely Hegedus could "be reached to get her cooperation to participate in this litigation."

As State Farm argued, California cases recognize that an insurer is entitled to intervene in an action against an insured where the insured cannot or will not defend itself, because the insurer is subject to an action by a judgment creditor under Insurance Code section 11580.[9] (See *Reliance Ins. Co. v. Superior Court* (2000) 84 Cal.App.4th 383, 386-387 ["[Insurance Code section 11580] provides that a judgment creditor may proceed directly against any liability insurance covering the defendant, and obtain satisfaction of the judgment up to the amount of the policy limits. [Citation.] Thus, where the insurer may be subject to a direct action under Insurance Code section 11580 by a judgment creditor who has or will obtain a default judgment in a third party action against the insured, intervention is appropriate."].) Moreover, direct intervention is warranted even where (as here) an insurer has provided a defense to the insured under a reservation of rights because an insurer has "not 'lost its

---

[9] Insurance Code section 11580, subdivision (b)(2), provides that insurance policies must include "[a] provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

9

right to control the litigation' [citation], and therefore retains a direct interest in the case." (*Gray v. Begley* (2010) 182 Cal.App.4th 1509, 1523.) State Farm asserted that an immediate need for intervention was created by a pending motion by plaintiffs to strike Hegedus's answer as a terminating sanction based on her noncompliance with the June 9, 2021 discovery order, which would result in a default judgment for which State Farm would ultimately be responsible.

On March 29, 2022 the trial court (Judge Crowfoot) granted State Farm leave to intervene.[10] State Farm filed a general denial and affirmative defenses, including comparative, contributory, and third-party negligence, alleging that Hegedus was not the cause of Adams's death.

In early 2023 State Farm filed an expert witness designation identifying a forensic pathologist, Dr. Marvin Pietruszka, who would testify about Adams's injuries and cause of death, and an accident reconstruction specialist, Jason Arst, to reconstruct the collisions and opine about the reasonableness of the parties' actions. Plaintiffs did not seek to depose the expert witnesses, and they did not serve any discovery requests on State Farm. The parties' attorneys later signed and filed a proposed joint witness list in which the defendants listed as their witnesses Dr. Pietruszka, Arst, and Dr. Juan Castillo, a pathologist with the Los Angeles County Department of Medical

---

[10] The trial court denied the motion for terminating sanctions against Hegedus, finding there was no showing she was aware of the court's discovery orders or that her disobedience was willful. Further, plaintiffs failed to file a statement of damages to sustain a default judgment.

10

Examiner.  No distinction was made between Hegedus and State Farm with respect to calling these witnesses.

E.      *State Farm's Motion in Limine To Exclude the Deemed Admissions*

Six weeks before the trial date, State Farm filed a motion in limine to exclude the requests for admissions and Hegedus's deemed admissions from trial.  State Farm argued the deemed admissions were binding only against Hegedus under section 2033.410, subdivision (b):  "State Farm has a right to defend against [p]laintiffs' claims without any effect or impact from [Hegedus's] default admissions, as admissions are only applicable to the party who makes them."  The deemed admissions were "irrelevant as to State Farm," and "[t]o allow any such argument or evidence to the contrary would only tend to confuse and mislead the jury," because the jury might improperly construe the admissions "as affirmative evidence against State Farm."  In opposition, plaintiffs conceded that a request for admission is "only admissible against the party making the admission . . . most of the time," but they argued an exception existed in this case because State Farm and Hegedus shared a "unity of interests," and allowing State Farm to introduce evidence challenging Hegedus's deemed admissions "would be rendering the deemed admissions useless . . . ."

The trial court heard argument on State Farm's motion in limine on April 28, 2023.[11]  The court made the following

---

[11]      Judge Richard Burdge ruled on the motions in limine, presided over the jury trial, and ruled on plaintiffs' new trial motion.  There was no court reporter at the April 28, 2023

11

tentative ruling, as set forth in its minute order: "[State Farm] is entitled to defend on liability as if the requests for admission do not exist, and they should not be admitted in a fashion where the jury could be confused that they apply to it. They prove no facts as to [State Farm]. As to [Hegedus], there does not appear to be any issue for the jury to decide on liability, as [Hegedus] is essentially deemed to have admitted liability on her own behalf. Therefore, there is no reason to admit requests for admission against [Hegedus] either. At trial, Hegedus's counsel should be limited to arguing damages." The court proposed to make a statement to the jury explaining that Hegedus's attorneys would not be able to present evidence and argument regarding her liability because "[s]he failed to respond to discovery properly, which prevents her from contesting liability," while State Farm's attorneys "will be able to contest all issues in the case without regard to [Hegedus's] discovery failures." The court stated that changes to the verdict form and jury instructions might be necessary.

As described in the April 28 minute order, plaintiffs' attorney objected to the trial court's proposal on the grounds the requests for admission had been deemed admitted for a long time and he would be "severely prejudiced" if the admissions were excluded from the trial because he "prepared for trial based on those [admissions] coming in against [Hegedus]." The attorney proposed that "the jury just be told that they do not relate to State Farm." After "considerable argument," the court "offered to amend the jury instruction on requests for admission to advise

---

hearing, and neither party has prepared a settled statement. (Cal. Rules of Court, rule 8.137(b).)

12

the jury that [Hegedus] had failed to respond and the court ruled that they were deemed admitted as to [Hegedus], but for this trial, the jury does not have to accept those admissions as true and the Defendants may contest those facts." According to the trial court, in later denying plaintiffs' new trial motion, an "understanding" was reached that the court would instruct the jury in this manner.

On the next court day (the first day of jury selection), the trial court provided the attorneys with a proposed jury instruction on the requests for admissions, and asked whether the parties had any objections.[12] Plaintiffs' attorney stated he did not have any objection, although later in the hearing he challenged language in the instruction stating "'the parties may introduce evidence disputing'" the truth of the admissions, arguing the sentence should be limited to plaintiffs and State Farm. The court observed the parties had argued the issue "at length" the previous day, and the court had "entered the order that both defendants could contest [the admissions]." Plaintiffs' attorney stated he "understood," and he sought clarification that he could use the first set of requests for admissions as exhibit 1 at trial. The court ruled: "Exhibit 1 will be admitted, but it's not admitted as to [State Farm]. . . . [¶] . . . So I'm going to have to give a limiting instruction." Plaintiffs' attorney agreed.

F.    *Trial and Jury Instructions*

Following jury selection, a four-day trial commenced on May 2, 2023. Plaintiffs called five witnesses. Limon testified

---

[12]    The trial court's proposed instruction is not in the record on appeal, but it appears the instruction did not differ significantly (if at all) from the instruction given.

13

that he did not see Adams prior to colliding with her bicycle, and he did not believe Adams's body made contact with his car. Based on his review of the surveillance video (which was shown to the jury), Limon believed Adams was seen "floating" above his car after the collision. He also disputed that her bicycle was dragged under his car.

Marangone testified he was driving on Sepulveda Boulevard at approximately 11:20 p.m. when he saw something in the roadway in the middle lane, which, as he approached, he realized was a woman. He pulled over to the curb and called 911, but before he could approach the woman, another car "came and went . . . right straight all over the body." The car stopped but "then [took] off again" before the police arrived. Asked on cross-examination whether Adams was responsive before the car ran over her body, Marangone testified he tried to talk to Adams, but she did not respond, and he did not have an opportunity to approach Adams and check her pulse. Asked if he could tell whether Adams was dead or alive, he stated "It's hard to tell, but I would say 50/50. . . . 50 that she could be alive; 50 that not."

The individual plaintiffs testified about their relationship with Adams and the damages they suffered as a result of her death. Dr. Bennett Williamson, a forensic psychologist, testified as an expert regarding Mondrosch's psychological injuries. Plaintiffs did not call any expert witnesses or additional percipient witnesses to testify about Hegedus's negligence, the dynamics of the accident, or Adams's injuries.

After plaintiffs' witnesses concluded their testimony, plaintiffs' attorney read to the jury the seven requests for admissions propounded on November 4, 2020 and the portion of the trial court's June 9, 2021 order granting the deemed

14

admissions, including the court's recitation of the circumstances of Hegedus's failure to participate in the defense. These materials were admitted as exhibit 1.[13]

Defendants called three witnesses on behalf of "the defense" collectively. Hegedus's attorney, and not State Farm's attorney, conducted the examinations. Arst analyzed the accident using the surveillance video, photographs of the accident scene, and police reports, and he presented the jury with a reconstruction of the accident dynamics, the location and speed of the vehicles involved, and the chain of events. He found that the initial collision with Limon's car was very forceful, denting Limon's car, and Adams's body was carried 60 to 70 feet down the road. Approximately 85 seconds after that initial collision, Hegedus ran over Adams's body in an area between streetlights, after slowing from 47 to 40 miles per hour.

Dr. Pietruszka testified, based on his review of the autopsy report, photographs from the scene, and the surveillance video, that Adams's immediate cause of death was a traumatic brain injury characteristic of a bicycle strike by an automobile, and he was certain Adams would have been dead by the time Hegedus's car ran over her body. Dr. Carrillo (the coroner who performed the autopsy) testified that Adams died as a result of multiple blunt force injuries, including severe injuries to both the head and the chest, injuries that would have been individually sufficient to kill her. In performing an autopsy, Dr. Carrillo was not tasked with and was unable to determine whether the impact from the first or second vehicle was the immediate cause of

---

[13] Plaintiffs' attorney also recited each of Hegedus's seven deemed admissions in his opening statement.

15

Adams's death. Dr. Carrillo also testified that Adams had a blood alcohol concentration of approximately three times the legal limit and a significant level of methamphetamine in her blood at the time of her death.

The trial court instructed the jury after the conclusion of witness testimony. Shortly before the court instructed the jury, plaintiffs' attorney requested a clarification with respect to the requests for admissions: "The only clarification that plaintiff[s] would ask for is in the last sentence. . . . I would ask the court to change that and say, for the purpose of this trial, *you may but you are not required*, to adopt them as your findings." (Proposed modification italicized.) The court declined to modify the instruction. The court then instructed the jury with a modified version of CACI No. 210: "Before trial, each party has the right to ask another party to admit in writing that certain matters are true. In this case, [Hegedus] failed to respond to those requests, and the Court ruled that they were deemed admitted but only as to [Hegedus], not as to [State Farm]. For the purposes of this trial you are not required to adopt them as your findings, and the parties may introduce evidence disputing their accuracy."[14]

---

[14] The CACI No. 210 pattern jury instruction states: "Before trial, each party has the right to ask another party to admit in writing that certain matters are true. If the other party admits those matters, you must accept them as true. No further evidence is required to prove them. [¶] [However, these matters must be considered true only as they apply to the party who admitted they were true.]" The directions for use state the bracketed phrase should be given "if there are multiple parties."

16

During closing arguments, plaintiffs' attorney walked the jury through the requests for admissions, noting that Hegedus was deemed to have admitted that she was negligent and caused the death of Adams. He challenged the expert testimony presented by defendants and urged the jurors to find Hegedus was negligent even without affirmative evidence. He asserted, "By operation of law, she admits to being negligent."

Hegedus's attorney argued in his closing, "Plaintiffs did not call any experts to refute the opinions of the experts presented by the defense. That is very important because that goes to the fact that they have not sustained their burden of proof. Plaintiffs are relying on the request for admissions because they have no evidence, obviously." Hegedus's attorney argued based on the modified CACI No. 210 instruction that "the law says that we can enter evidence disputing their accuracy, which is precisely what we've done." State Farm's attorney argued that plaintiffs "knew that Ms. Hegedus was not involved in the litigation, and so they took a chance to serve those requests for admission." The requests for admissions were a "legal gotcha to try to prove something that they knew they couldn't prove." The attorney emphasized the defendants presented substantial evidence through the testimony of Dr. Pietruzska that Adams was killed by Limon's car, and plaintiffs failed to present any contrary evidence other than Limon's and Marangone's irrelevant testimony.

After less than a day of deliberation, on May 5, 2023 the jury returned its verdict pursuant to a special verdict form. The jury found 11-to-1 that Hegedus was negligent. However, the jury unanimously found that Hegedus's negligence was not "a substantial factor in causing [Adams's] death." The jury did not

17

advance to the other issues on the special verdict form.[15]  On May 8 the trial court entered a judgment for defendants and served notice of entry of the judgment.

## G.     *Plaintiffs' Motion for New Trial*

On May 23, 2023 plaintiffs filed a motion for a new trial, arguing the trial court erred in allowing Hegedus to introduce evidence as to negligence and causation despite her deemed admissions, which resulted in a de facto withdrawal of the admissions.  They argued a motion in limine is not a valid basis to seek relief from a deemed admission, which cannot be amended or withdrawn except by a noticed motion under sections 2033.300, subdivision (a), and 2033.280, subdivision (b).  They conceded case law "clearly supported the [c]ourt ruling that [State Farm] also be allowed to contest liability and damages," but the law did not support Hegedus ignoring the deemed admissions and submitting evidence contesting the admissions.  The error was prejudicial because defendants argued to the jury "that [p]laintiffs did not meet their burden of proof, which was untrue because of [deemed admissions]."

In her opposition Hegedus argued, among other things, that plaintiffs' attorney did not object to the modified version of CACI No. 210 that allowed the parties to introduce evidence on liability.  Further, the instruction supported plaintiffs' demand

---

[15]     The special verdict form required the jury, if it found liability, to make an apportionment of fault among Hegedus, Limon, and Adams, but the form did not identify State Farm and did not ask the jury to apportion fault or damages between Hegedus and State Farm.  The parties do not argue on appeal that the form was defective.

18

that the deemed admissions be read to the jury.  In addition, Hegedus asserted, once the trial court ruled on defendants' motion in limine, plaintiffs knew the defense would present evidence on liability but they did not request the court allow them to depose the defense experts or request a trial continuance.  Nor did they object during the opening and closing arguments when Hegedus's attorney discussed the evidence on negligence and causation.

After a hearing, on July 17, 2023 the trial court denied the motion for new trial.  The court explained in its nine-page ruling that at the hearing on the motions in limine the court announced its tentative ruling that limited Hegedus's evidence and argument to damages, and did not allow the deemed admissions to be used against State Farm (or admitted at all).  But "plaintiffs objected to the [c]ourt's ruling and insisted [they] should be able to introduce the admissions into evidence and suggested the jury instructions be revised to accommodate that."  The court ruled in response to the objection that it would amend the jury instructions to advise the jury of the deemed admissions but instruct that defendants could contest the admitted facts.  Plaintiffs' attorney did not object to CACI No. 210 as modified, and on the day the jury was instructed, the attorney requested only a minor modification.

The trial court found, "[T]he law is clear that admissions deemed admitted were only potentially binding on Hegedus and not on State Farm.  [Citation.]  The court was thus presented with a situation that could lead to an inconsistent verdict: Hegedus caused the death based on the requests deemed admitted introduced against her but Hegedus was not liable based on State Farm's defense without the requests deemed

19

admitted being introduced against it.  That led to its tentative described above that the court changed upon the insistence of [p]laintiffs' counsel."

The trial court rejected plaintiffs' argument that the in limine ruling prevented them from offering evidence to establish their case.  Plaintiffs had ample notice from the time of State Farm's intervention that it would challenge liability, yet they did not seek discovery from State Farm or the defense experts.  Finally, allowing Hegedus to present evidence on liability was not prejudicial because State Farm was entitled to present and did present evidence that "the initial collision with Limon's vehicle caused the death, and there was credible evidence that [Adams] was no longer alive when Hegedus's vehicle hit her."

Plaintiffs timely appealed.

## DISCUSSION

A.     *The Use of Deemed Admissions with Multiple Defendants*

Chapter 16 of the Civil Discovery Act (§ 2033.010 et seq.) governs requests for admissions.  Section 2033.010 provides that any party to an action may request "any other party to the action [to] admit the genuineness of specified documents, or the truth of specified matters of fact, opinion relating to fact, or application of law to fact" as to a controverted issue.  "Any matter admitted in response to a request for admission is conclusively established against the party making the admission in the pending action. . . ."  (§ 2033.410, subd. (a).)  However, the admission is "binding only on that party."  (*Id.*, subd. (b).)

If a party served with requests for admissions fails to timely serve a response, "[t]he requesting party may move for an

20

order that the genuineness of any documents and the truth of any matters specified in the requests be deemed admitted," and the court must generally enter such order if the responding party remains noncompliant. (§ 2033.280, subds. (b), (c).) "[A] deemed admitted order establishes, by judicial fiat, that a nonresponding party has responded to the requests by admitting the truth of all matters contained therein." (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 979; accord, *Inzunza v. Naranjo* (2023) 94 Cal.App.5th 736, 742 (*Inzunza*).) Like an actual admission, "[a]ny matter deemed to have been admitted 'is conclusively established against the party making the admission' but 'is binding only on th[e] party' that made the admission." (*Inzunza*, at p. 742.)

In *Inzunza, supra*, 94 Cal.App.5th at pages 746 through 748, the Court of Appeal addressed the use of one defendant's deemed admissions against a vicariously liable codefendant in circumstances very similar to those here. In that case, Jose Naranjo died when his vehicle collided with the rear of a tractor-trailer truck driven by Jose Inzunza on behalf of trucking company CRGTS. (*Id.* at pp. 739-740.) Naranjo's surviving family brought a wrongful death action against Inzunza and CRGTS, alleging Inzunza was negligent and CRGTS was vicariously liable. (*Id.* at p. 740.) The plaintiffs served Inzunza with requests for admissions asking him to admit he was negligent, his negligence caused Naranjo's death, and Naranjo was not comparatively negligent. (*Ibid.*) Inzunza failed to respond, his lawyers could not locate him, and the trial court deemed the requests admitted. (*Ibid.*) Plaintiffs then filed a motion in limine to preclude CRGTS from offering any trial evidence or argument contrary to Inzunza's deemed admissions.

(*Id.* at pp. 740-741.)  The court granted the motion and prohibited CRGTS from calling multiple eyewitnesses who were prepared to testify that Naranjo failed to apply his brakes even though Inzunza's stopped truck was highly visible and others slowed. The deemed admissions were published to the jury and the parties presented evidence only on damages.  (*Id.* at p. 741.)  The jury returned a verdict for the plaintiffs, awarding $7.6 million for which the defendants were jointly and severally liable.  (*Ibid.*)

On appeal from the judgment, CRGTS argued the trial court erred in preventing it from presenting evidence to contest liability and comparative fault based on Inzunza's deemed admissions.  (*Inzunza, supra*, 94 Cal.App.5th at p. 742.)  The plaintiffs conceded that the deemed admissions were binding only on Inzunza under section 2033.410, subdivisions (a) and (b), but they countered that CRGTS was nevertheless precluded from presenting liability evidence "because that evidence would directly contradict Inzunza's deemed admissions" and "CRGTS's liability is merely derivative of Inzunza's based on the doctrine of vicarious liability."  (*Ibid.*)  The Court of Appeal rejected this argument, holding Inzunza "was not acting as CRGTS's agent when he failed to timely deny the requests for admissions," and "while it is fair to hold CRGTS liable for Inzunza's actual actions and inactions during the course and scope of his employment as its agent, it is unfair to hold CRGTS liable for deemed admissions of fault resulting from Inzunza's failure to timely respond to the requests for admissions."  (*Id.* at p. 744.)  The court concluded "an agent's deemed admissions do not bind the principal codefendant, even when the basis for the action against the principal codefendant is vicarious liability arising from the acts of the agent.  To hold otherwise would directly contradict the plain

language of section 2033.410." (*Id.* at p. 746, footnote omitted.) The court reversed the judgment against CRGTS and remanded for a new trial. (*Id.* at p. 747.)[16]

In reaching its conclusion, the court in *Inzunza, supra*, 94 Cal.App.5th at page 745 relied on the holding in *Western Heritage Ins. Co. v. Superior Court* (2011) 199 Cal.App.4th 1196 (*Western Heritage*), in which insurer Western Heritage was granted leave to intervene as a defendant based on its prospective exposure to a judgment under Insurance Code section 11580, subdivision (b)(2), for the insured motorist's liability in a wrongful death action in light of a default entered against the motorist, who could not be found. The Court of Appeal granted Western Heritage's petition for writ of mandate and vacated the trial court's in limine ruling that Western Heritage as an intervenor had only those rights the defaulted insured had, so it could only litigate damages, not liability. (*Western Heritage*, at pp. 1202-1204.)

The *Western Heritage* court explained, "A party permitted to intervene is permitted to do so in order to pursue its *own interests*. Once permitted to intervene, it is a party to the action not bound by other parties' procedural defaults." (*Western*

---

[16] The *Inzunza* court also set aside the judgment against Inzunza pending the new trial, because Inzunza would be entitled to the benefit of any defenses proven by CRGTS notwithstanding his deemed admissions. (*Inzunza, supra*, 94 Cal.App.5th at p. 747.) The court held that if the plaintiffs elected not to retry the case against CRGTS, the trial court should enter a judgment against Inzunza, but without prejudice to Inzunza's right to bring a new appeal for review of other issues (such as damages and standing) that had been raised on appeal but not reached by the court. (*Id.* at pp. 747-748.)

*Heritage, supra*, 199 Cal.App.4th at p. 1207.)  Especially in the insurance context, insurers "'may have no other opportunity to litigate fault or damage issues in any action brought by plaintiff on its judgment under Insurance Code section 11580.'"  (*Id.* at pp. 1207-1208.)  Further, "[a] party's default does not bind nondefaulting codefendants, even when the basis for the action against the codefendants is vicarious liability arising from the acts of the defaulting defendant."  (*Id.* at p. 1211.)

Plaintiffs contend *Western Heritage* is inapposite because Hegedus was not in default and she participated (or at least her lawyers participated) in the trial.  The *Inzunza* court rejected this distinction, reasoning, "Whether the defendant fails to answer the complaint, or to respond to requests for admission, facts are established by his or her failure to respond."  (*Inzunza, supra*, 94 Cal.App.5th at p. 745.)  Further, the court suggested the principle articulated in *Western Heritage* might apply "with even greater force in the deemed admissions context[] because the controlling statute explicitly states admissions by one party are 'binding only on that party[.]'  (§ 2033.410, subd. (b).)"  (*Inzunza*, at p. 745.)

B.    *Standard of Review of In Limine Rulings and Jury Instructions*

""'Generally, a trial court's ruling on an in limine motion is reviewed for abuse of discretion.'""  (*Inzunza, supra*, 94 Cal.App.5th at p. 742; accord, *Mardirossian & Associates, Inc. v. Ersoff* (2007) 153 Cal.App.4th 257, 269 ["As rulings on the admissibility of evidence, they are subject to review on appeal for abuse of discretion."].)  Here, however, plaintiffs raise a legal question as to the allowable relief from deemed admissions,

24

which we review de novo.  (See *Inzunza*, at p. 742 [reviewing trial court's in limine ruling de novo where "the trial court's order was predicated on its interpretation of section 2033.410"]; *Reynaud v. Technicolor Creative Services USA, Inc.* (2020) 46 Cal.App.5th 1007, 1021 ["While we generally review orders on motions in limine for abuse of discretion, our review is de novo when the issue is one of law."].)

We review a claim of instructional error de novo.  (*Suffolk Construction Co., Inc. v. Los Angeles Unified School Dist.* (2023) 90 Cal.App.5th 849, 869; accord, *Holistic Supplements, LLC v. Stark* (2021) 61 Cal.App.5th 530, 548.)  "'[W]e view the evidence in the light most favorable to the appellant.  In such cases, we assume that the jury might have believed the evidence upon which the instruction favorable to the appellant was predicated.'" (*Holistic Supplements*, at p. 548; accord, *Alcala v. Vazmar Corp.* (2008) 167 Cal.App.4th 747, 754, 84 Cal.Rptr.3d 402.)  "A judgment may not be reversed for instructional error in a civil case 'unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.'  [Citation.] . . .  [¶]  Instructional error in a civil case is prejudicial 'where it seems probable' that the error 'prejudicially affected the verdict.'" (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.)

C.    *The Trial Court Did Not Err in Instructing the Jury as to State Farm's Right To Present Evidence Controverting the Deemed Admissions; Any Error as to Hegedus Was Invited Error*

Plaintiffs contend the trial court prejudicially erred by allowing Hegedus to present evidence on negligence and

causation despite her deemed admissions, and by instructing the jury it was not required to adopt the admissions. As plaintiffs concede, however, there was no error as to State Farm, which was not bound by the admissions and was entitled to defend on all issues. As to Hegedus, we agree with plaintiffs that the modified CACI instruction was erroneous in allowing Hegedus to present evidence on negligence and causation. But plaintiffs invited the error by objecting to the trial court's correct tentative ruling that allowed Hegedus to argue only damages but prevented the jury from learning of the deemed admissions. Instead, plaintiffs invited the court to allow plaintiffs to use the deemed admissions in exchange for Hegedus presenting evidence on negligence and causation. Having made this high-risk bargain in the hope of obtaining a favorable verdict against State Farm based on the deemed admissions, plaintiffs cannot now challenge the bargained-for instruction after receiving an unfavorable verdict against both defendants.

"'Where a party by his conduct induces the commission of error, he is estopped from asserting it as a ground for reversal' on appeal." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403; accord, *Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1152.) "This application of the estoppel principle is generally known as the doctrine of invited error." (*Horsemen's Benevolent & Protective Assn. v. Valley Racing Assn.* (1992) 4 Cal.App.4th 1538, 1555.) "'"The doctrine of invited error is designed to prevent [a party] from gaining a reversal on appeal because of an error made by the trial court at his behest. If . . . counsel intentionally caused the trial court to err, the appellant cannot be heard to complain on appeal. . . . [I]t also must be clear that counsel acted for tactical reasons and not out of ignorance or

26

mistake.""" (*People v. Waldon* (2023) 14 Cal.5th 288, 304 (*Waldon*); accord, *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49.) Questions of invited error often arise where, as here, a trial court makes an erroneous evidentiary ruling based on an objection from the party who later asserts the error. (See, e.g., *Chakalis v. Elevator Solutions, Inc.* (2012) 205 Cal.App.4th 1557, 1570 [plaintiff was estopped from arguing defendants failed to prove breach of medical standard of care where trial court erroneously sustained plaintiff's objection to defendants' expert testimony on breach]; *Kessler v. Gray* (1978) 77 Cal.App.3d 284, 290 [defendant estopped from raising insufficiency of the evidence on appeal where evidence was excluded based on erroneous ruling sustaining defendant's hearsay objection].)

However, """"[a]n attorney who submits to the authority of an erroneous, adverse ruling after making appropriate objections or motions, does not waive the error in the ruling by proceeding in accordance therewith and endeavoring to make the best of a bad situation for which he was not responsible."""" (*Gilkyson v. Disney Enterprises, Inc.* (2021) 66 Cal.App.5th 900, 918; accord *American Master Lease LLC v. Idanta Partners, Ltd.* (2014) 225 Cal.App.4th 1451, 1472-1473 [defendants did not forfeit their right to challenge an erroneous pretrial ruling about the scope of aiding and abetting liability for breach of fiduciary duty by proposing a jury instruction that was consistent with the pretrial ruling rejecting their argument].) In this case, the trial court's proposed in limine ruling was correct, and plaintiffs' attorney made the tactical decision to object to the ruling and invited the modified instruction that plaintiffs now challenge as error.

We begin our analysis with the trial court's proposed ruling. As discussed, the trial court initially held, in response to

27

State Farm's motion in limine to exclude the deemed admissions, that State Farm was "entitled to defend on liability as if the requests for admission do not exist, and they should not be admitted in a fashion where the jury could be confused that they apply to it." Further, there was "no reason" to admit the requests for admissions against Hegedus, because she was restricted to arguing damages at trial. As part of its tentative ruling the court proposed to admonish the jury that Hegedus "failed to respond to discovery properly, which prevents her from contesting liability," but State Farm could "contest all issues in the case without regard to [Hegedus's] discovery failures."

As plaintiffs concede, the tentative ruling was not erroneous in preventing plaintiffs from using the deemed admissions against State Farm under section 2033.410, subdivision (b). And State Farm was allowed, consistent with this section, to present evidence Adams was killed by Limon's car. Likewise, State Farm was entitled in its closing argument to highlight the fact plaintiffs failed to prove their case, instead relying on a "legal gotcha to try to prove something that they knew they couldn't prove." Moreover, plaintiffs had notice from the time of State Farm's intervention in March 2022 that State Farm intended to defend against negligence and causation, and State Farm timely disclosed its experts in January 2023. Yet plaintiffs did not designate their own experts, seek discovery from State Farm, or depose State Farm's experts—they made these decisions long before the in limine ruling on the eve of the trial. And once the trial court made its ruling on defendants' in limine motion in April 2023, plaintiffs could still have requested leave to submit a late designation of their own expert witnesses (§§ 2034.710, 2034.720) or leave to depose the defendants' expert

28

witnesses (along with a trial continuance). Under the circumstances, it was not an abuse of discretion, nor do plaintiffs argue it was, for the court to exclude the deemed admissions entirely as unduly prejudicial to State Farm, given that Hegedus's liability would no longer be at issue. Plaintiffs also do not challenge State Farm's right to intervene, "[t]he entire purpose of [which] is to permit the insurer to pursue its own interests, which necessarily include the litigation of defenses its insured is procedurally barred from pursuing." (*Western Heritage, supra*, 199 Cal.App.4th at p. 1208.)

We recognize the trial court faced a challenge in determining the proper role of Hegedus's deemed admissions given that both Hegedus and State Farm would participate at trial, but only State Farm could present evidence on negligence and causation. (See *City of Glendale v. Marcus Cable Associates, LLC* (2015) 235 Cal.App.4th 344, 353-354 [requests for admission provide "a dispute-resolution device that eliminates the time and expense of formal proof at trial"].) The trial court's proposed in limine ruling properly struck a balance consistent with the law (and the later *Inzunza* decision) and reduced the danger of an inconsistent verdict, although, as the court observed, changes would be necessary to the jury instructions[17] and verdict form.

---

[17] Plaintiffs argue the CACI No. 210 pattern jury instruction provided a sufficient framework to ensure the deemed admissions would apply only to Hegedus and not State Farm, because the pattern instruction included the limitation that "these matters must be considered true only as they apply to the party who admitted they were true." We do not reach whether the pattern instruction would have been sufficient in this case (and not confusing), where State Farm's liability was entirely derivative of

29

That balance was not acceptable to plaintiffs. As described by the trial court, at the April 28, 2023 hearing on the motion in limine, "plaintiffs objected to the [c]ourt's ruling and insisted [they] should be able to introduce the admissions into evidence and suggested the jury instructions be revised to accommodate that" because they had "prepared for trial based on those [admissions] coming in against [Hegedus]."[18] As discussed, there was "considerable argument" at the hearing, and there was an understanding the court would allow the deemed admissions to come in but instruct the jury that both defendants could contest the admitted facts. The modified CACI No. 210 instruction given to the jury stated Hegedus had failed to respond to requests for admissions, the court had ruled "that they were deemed admitted but only as to [Hegedus], not as to [State Farm]," and the jury was "not required to adopt them as [the jury's] findings, and the parties may introduce evidence disputing their accuracy."

_____

Hegedus's liability and the special verdict form made no distinction between the two parties in asking the jury to find Hegedus was negligent and caused Adams's death.

[18] Because we have no reporter's transcript or settled statement from the April 28, 2023 hearing, absent any contrary evidence in the record, we adopt the trial court's characterization of the hearing. A trial court judgment is presumed to be correct, and to overcome that presumption, the appellant "must affirmatively establish prejudicial error by providing an adequate record, citing to the record, and presenting a persuasive argument with citations to supportive legal authorities." (*LNSU #1, LLC v. Alta Del Mar Coastal Collection Community Assn.* (2023) 94 Cal.App.5th 1050, 1070.)

Plaintiffs' attorney did not object to this instruction.[19]

We agree with plaintiffs that the modified jury instruction was inconsistent with section 2033.410, subdivision (a). Hegedus constructively admitted she was negligent and caused Adam's death. Liability was "conclusively established" against her through the deemed admissions (§ 2033.410, subd. (a)), relieving plaintiffs of the burden and expense to prove her liability at trial. (*City of Glendale v. Marcus Cable Associates, LLC, supra*, 235 Cal.App.4th at p. 354.) Moreover, as plaintiffs argue, the deemed admissions could only be withdrawn or amended by court order following a noticed motion brought under section 2033.280, subdivision (b), which Hegedus never filed. Instead, based on the modified jury instruction, Hegedus's attorney was able to conduct the examination of the defense experts, and he told the jury (without objection) that "the law says that we can enter evidence disputing" the admissions. He even argued a judgment for Hegedus was necessary because "[plaintiffs] have not sustained their burden of proof." We assume the modified jury instruction was therefore a significant factor in the jury finding that although Hegedus was negligent, her negligence was not a substantial factor in Adams's death.

---

[19]    As discussed, at a subsequent hearing on the jury instructions, plaintiffs' attorney initially confirmed he had no objections to the instruction, but later in the hearing he argued the jury instruction should state that only State Farm could introduce evidence disputing the admissions. After the trial court reminded the attorney of his arguments at the prior hearing and that the instruction was "an accommodation" for plaintiffs to use the deemed admissions at trial, the attorney acquiesced and sought confirmation the admissions would be admitted at trial as exhibit 1.

However, plaintiffs invited the erroneous jury instruction. As discussed, they could have accepted the trial court's proposed in limine ruling and a jury instruction that prohibited Hegedus from challenging liability, but their attorney objected because he wanted the deemed admissions to be presented to the jury. On the record before us, we find it ""'clear that counsel acted for tactical reasons and not out of ignorance or mistake.'"" (*Waldon, supra*, 14 Cal.5th at p. 304.) Indeed, pursuing the modified, yet erroneous instruction may have been plaintiffs' *optimal* strategy under the circumstances. Hegedus could not be reached by her lawyers, her family, or a private investigator; her whereabouts were unknown; and she was likely living on the streets. Thus, it would be challenging for plaintiffs to collect on a judgment against Hegedus individually. Further, once State Farm intervened, the likelihood of winning at trial was diminished because there was uncontroverted evidence, including video recordings and the coroner's report, indicating Hegedus's role in Adams's death was secondary to Limon's (and possibly Adams's). Moreover, the cost of hiring experts and taking expert discovery would have dwarfed the $30,000 State Farm policy limit.

Accordingly, plaintiffs benefitted from the jury learning that Hegedus admitted she was negligent and caused the accident, in the hope the jury would award damages against State Farm without plaintiffs presenting expert testimony on causation. Indeed, plaintiff's attorney in his closing argument addressed only Hegedus's negligence, relying on the deemed admissions, without addressing State Farm. And the jury verdict did not distinguish between Hegedus and State Farm. Thus, although technically the requests for admissions were only deemed admitted as to Hegedus, plaintiffs were able to rely on

the deemed admissions to ask the jury to find on the verdict form that Hegedus was negligent (question 1) and that "Hegedus's negligence [was] a substantial factor in causing Tracy Adams's death" (question 2). This created a tactical motive for plaintiffs to object to the court's initial in limine ruling excluding the deemed admissions from evidence, notwithstanding that Hegedus's liability would have been established. (*Waldon, supra*, 14 Cal.5th at p. 304.) The gamble did not pay off—the jury answered "yes" to question 1 and "no" to question 2—but plaintiffs are still bound by the consequences of their bargained-for instruction.

## DISPOSITION

The judgment is affirmed. Hegedus and State Farm are to recover their costs on appeal.


FEUER, J.

We concur:


SEGAL, Acting P. J.          PULOS, J.*

---

* Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.